STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-14-008

SANDRA SACCO,

        Petitioner

v.

        JUDGMENT

TOWN OF NEW GLOUCESTER,

        Respondent

Jury-waived trial of the facts on count I of petitioner Sandra Sacco's amended complaint against respondent Town of New Gloucester was held on December 2 and 3, 2015. Briefs were filed by March 18, 2016. Subject to respondent's motion in limine, the issues presented by petitioner are

1. whether respondent improperly used the executive session function under 1 M.R.S. § 405;

2. whether respondent improperly failed to notify petitioner of her right to be present at the executive session resulting in the reduction of hours and failure to provide her with an opportunity to be heard;

3. whether respondent improperly failed to reinstate petitioner to the bookkeeper position on December 2, 2013; and

4. whether respondent improperly failed to reinstate petitioner to the bookkeeper position on December 26, 2013.

(Pet.'s Opp'n Mot. Limine 4; Resp.'s Mot. Limine 1-2.) For the following reasons, the court concludes respondent did not violate section 405 on November 4, 2013. Respondent's failure to reinstate petitioner on December 2, 2013 and on December 26, 2013 is affirmed.

1

## PROCEDURAL HISTORY

On February 7, 2014, petitioner filed her complaint against respondent. She alleged five causes of action: count I, Rule 80B review of respondent's actions; count II, violation of due process under 42 U.S.C. § 1983; count III, equitable estoppel; count IV, promissory estoppel; and count V, interference with prospective economic advantage. On March 13, 2014, the court granted petitioner's motion to join the independent claims with the Rule 80B action.

Respondent filed a motion to dismiss on March 20, 2014. On April 15, 2014, petitioner filed an opposition to the motion to dismiss as to counts I through IV and agreed to dismiss count V. On the same day, petitioner filed a motion to amend the complaint and an amended complaint, in which she added the Town's former Town Manager, Sumner Field, as a respondent. She reasserted count I, Rule 80B review, against respondent Town; asserted count II, violation of due process under 42 U.S.C. § 1983; count III, equitable estoppel; and count IV, promissory estoppel, against both respondents; asserted count V, interference with prospective economic advantage, against respondent Field; and added count VI, intentional infliction of emotional distress; and count VII, negligent misrepresentation, against both respondents. On April 22, 2014, petitioner filed a motion for a trial of the facts. M.R. Civ. P. 80B(d).

On October 1, 2014, the court granted petitioner's motion for a trial of the facts and motion to amend the complaint. The court granted respondents' motion to dismiss the complaint in part and dismissed counts III, IV, V, and VII of the amended complaint.

On July 15, 2015, respondent Town moved for summary judgment. On August 31, 2015, the parties stipulated to dismissal with prejudice of count VI as to both respondents and dismissal of count II as to respondent Field only. The remaining

2

counts in the amended complaint were counts I and II against respondent Town only. On September 1, 2015, petitioner filed an opposition to respondent's motion for summary judgment. On September 11, 2015, respondent filed a reply to petitioner's statement of additional facts and moved to strike lay opinion testimony in petitioner's opposition. On November 12, 2015, the court denied respondent's motion for summary judgment as to count I and granted the motion as to count II. The court also granted respondent's motion to strike lay opinion testimony.

On November 30, 2015, respondent filed a motion in limine seeking to limit the trial to the issue of whether respondent improperly refused to consider petitioner's application. Respondent argued that petitioner's claims under the Freedom of Access Act (FAA) were untimely because she did not bring them within 30 days of discovering the alleged violation.

A bench trial was held on December 2 and 3, 2015. The motion in limine was argued on December 2. The court determined that during trial, the court would consider the four issues listed by petitioner in her memorandum in opposition to the motion in limine. The court took respondent's motion in limine under advisement.

FINDINGS OF FACTS

Petitioner is age 56 and since September 2015 has resided in Sebastian, Florida. She worked for respondent for nearly 26 years, originally as deputy clerk and tax collector and, since 2007, as deputy treasurer and bookkeeper. Her duties included processing payroll for respondent's employees, bookkeeping, reconciling accounts, and the budget. Respondent has 25 employees and eight employees work at the Town office.

Prior to November 4, 2013, petitioner had not been disciplined by respondent. She worked closely with Mr. Field. When he became manager, she discussed her

3

concerns about her job and Mr. Field told her he had no issues with her or the job. This relationship continued until November 2013. She knew that Mr. Field had submitted his resignation and would not longer be working after January 2, 2014.

During her employment with respondent, she was not required to attend Board meetings. She did not attend the November 4, 2013 meeting because she did not know the bookkeeper position would be discussed or changes would be made to the position. She knew the agenda included an executive session with regard to "employment, assignment and duties of employees." (Pet.'s Ex. 4.)

Petitioner worked the week of November 4. On November 5, 2013, at 3:00 p.m., Mr. Field said he needed to speak to petitioner. He told her the bookkeeper position's hours would be decreased to 24 hours per week and benefits would be eliminated. He said he did not know any further details other than a motion was made at the November 4 meeting and it passed effective January 2, 2014 by a three to two vote.

Petitioner testified she asked what she could do to retain her full-time position and continue to receive benefits. She testified Mr. Field said he would work with her and figure something out.

Petitioner requested to speak to the Board. Mr. Field stated she could not and could speak only to the Chair of the Board, Steven Libby. Petitioner asked if she could set up a meeting and Mr. Field said he would do that. She assumed he did that because on November 5, Mr. Field said Mr. Libby would contact petitioner. On November 6, petitioner asked Mr. Field if he had contacted Mr. Libby and asked again if she could meet with him. Mr. Field responded that Mr. Libby had not gotten back to Mr. Field and he did not know. She requested to perform other tasks and Mr. Field said he would look into that. She did not know he thought he needed an administrative

4

assistant and they did not discuss that. As far as she knew, she performed administrative duties.

She did not receive any further response from Mr. Libby. Mr. Field left at noon on November 8 without speaking with petitioner. She described herself as "a mess" and called her primary care physician on November 11, who felt petitioner should remain out of work for two weeks, which she did because of stress and anxiety. Petitioner put the doctor's note on Mr. Field's desk on November 12.

During the following two weeks she was on medical leave. With the news that her hours were reduced and with everything that was going on, she was an "emotional mess." Her interaction with Mr. Field during her medical leave was by email only. Petitioner never met with the Board or Mr. Libby.

Petitioner did not attend the November 18 meeting. (Pet.'s Ex. 7.) She saw the agenda. She knew people were upset with the events of November 4 because New Gloucester citizens had called and sent notes to her. The Lewiston Sun also carried a story about the events.

Petitioner watched the November 18 meeting on television. She was very grateful that Selectmen Joshua McHenry and Mark Stevens tried to have the bookkeeper position reinstated to 40 hours and benefits. Their effort failed. (Pet.'s Ex. 7 2.)

While on leave, petitioner was aware there was a concern about banking information because of a change in banks. The relevant information was on petitioner's desk but she could not respond further until she returned to work from medical leave.

Petitioner returned to work on November 25. Mr. Field stated that the amounts paid to the school districts were not correct. Mr. Field said the school payments were off by $28,000.00. She responded that she had concluded the school payments were not

5

correct and she had resolved the issue with the financial person at the school district. Everything had been resolved before her medical leave. Petitioner was shocked regarding issues about Cumberland County dispatch payments. She had a full schedule of the payments made and knew she was not wrong. She later learned that Mr. Field said he was wrong and that he learned the problems had been resolved.

On November 25, Mr. Field asked petitioner to go to his office. There, he gave her a memo in which he stated she had made errors with the school payments and the Cumberland County dispatch payments. (Pet.'s Ex. 6.) The memo provided that petitioner was on probation for 60 days, which could result in termination. (Pet.'s Ex. 6.)

Petitioner had never had anything like this happen in her career. She felt Mr. Field had suspended her for two weeks and she left that day at 9:00 or 9:30 a.m. She spoke to her husband, who informed her she was on probation, not suspended, and should be at work. Petitioner called Mr. Field and stated she had misconstrued what was being done, she was going to take a sick day, and would be back at work the following day. She continued to read the memo from Mr. Field, however, and felt she was being pushed out. She denied having a negative attitude, as stated in the memo, and enjoyed her work. She believed that what happened had nothing to do with reorganization and respondent wanted her out of there.

When she went to work on November 25, she had no intention of resigning. Petitioner decided to resign after being confronted with Mr. Field's allegations regarding accounting errors and because of the way Mr. Field treated her on November 25. She submitted her resignation. (Pet.'s Ex. 8.)' She felt Mr. Field had lied in the

---

' "Gary" is petitioner's email address.

memo and she was being pushed out. She was newly married and depended on her income.

If she could turn back the clock, petitioner would not have resigned. The resignation was a rash decision that she regretted. She knew reinstatement of the bookkeeper position would be revisited at the December 2 meeting but resigned anyway. At trial, she testified her resignation resulted from a combination of everything, including the November 4 action and what Mr. Field said to her. She did not know what to do.

She had intended to work until age 60. She and her husband then intended to retire and live in Florida. She would not have resigned if the November 4 decision had not been made but she could not see herself continuing to work there under those conditions.

She followed the personnel handbook policy and gave two weeks notice on November 25; she intended to work the two weeks. (Pet.'s Ex. 15 ¶ 16.) The Town Manager may make an exception to the notice requirement. Mr. Field accepted her resignation and told her there was no reason for her to work the two weeks and she would be paid for the weeks. (Pet.'s Ex. 8.) From November 25 to December 6, she did not go to the office on a regular basis to work because Mr. Field said it was unnecessary. She continued to receive paychecks. She dropped off her keys on December 6 when she received her last paycheck. Petitioner never rescinded her resignation.

Petitioner attended the December 2 Board meeting. People spoke about the executive session and in support of petitioner's reinstatement. (Pet.'s Ex. 9 1.) A motion was made to reconsider the November 4 motion. The motion passed and, in response to a question, Mr. Libby stated he understood that the action returned things back to before the November 4 meeting. (Pet.'s Ex. 9 2.)

7

Petitioner did not say anything at the December 2 meeting because she was too emotionally unstable because of what had happened. It did not occur to her that the Board should have said she was to return to work on Monday. She did not rescind her resignation between December 2 and December 6. When asked whether she considered she had her job back after the December 2 vote, she testified she did not think of it at all. She was quite confused. She did not return to work.

Petitioner consulted an attorney a week after the December 2 meeting to learn her legal rights and responsibilities under the rules. Between December 2 and December 26, respondent posted the bookkeeper position on its website. (Pet.'s Ex. 10.) Petitioner was aware of the posting. A special meeting of the Board was held on December 26. The offering to petitioner of severance pay and salary was listed on the agenda.

At the December 26 meeting, petitioner asked the Board to rehire her. (Pet.'s Ex. 11 1.) The Board stated it was not the Board's decision and the Town Manager hires and manages the position. (Pet.'s Ex. 11 1.) She knew she had to reapply for the bookkeeper position and she testified at her deposition that she knew she had to reapply for the bookkeeper position. (Pet.'s Ex. 20 143.) She submitted by email a letter, drafted by her attorney, in which she requested reinstatement. (Pet.'s Ex. 12.) When asked at trial whether she reapplied because she did not think she had a job, she testified that was how it was made to look because the job was posted.

The December 26 meeting ended just after 4:00 p.m., when the Town office closes. Petitioner submitted her application several hours later. (Pet.'s Ex. 12.)

Because she received no response from Mr. Field to her December 26 email, she sent another email to him. (Pet.'s Ex. 13.) Mr. Field responded by letter dated Sunday, January 6, 2014, which petitioner received on January 7, 2014. (Pet.'s Ex. 14.) She was

8

told her application had been submitted after the deadline and would not be considered.

Respondent's personnel policy and procedures provide for discipline, discharge, and suspension. (Pet.'s Ex. 15 ¶ 18.) Petitioner was aware of the grievance procedure and she was aware a grievance must be submitted in writing. (Pet.'s Ex. 15 ¶ 17.) A grievance must be commenced no later than ten days after the event that gives rise to the grievance. (Pet.'s Ex. 15 ¶ 17.) She did not file a written grievance. Petitioner said a grievance was not in the forefront of her thoughts. She felt the meeting with Mr. Field was enough and she considered her request to speak to Mr. Libby a grievance.

Since December 6, 2013, she has worked for temporary services and for a number of employers, including the Town of North Yarmouth. She resigned from that job. She has applied for positions similar to the one she had with respondent.

Petitioner and her husband, who retired from employment with respondent, sold their home, and moved to Florida in September 2015. They now own a house in Sebastian, Florida. She is currently not working outside of the home.

If reinstated, petitioner would "absolutely" move back to Maine. She would like to work until age 60 at least. According to petitioner, she should be reinstated because the bookkeeper position's hours should never have been reduced. There was no reason for any of this because there were no performance issues whatsoever. Any reorganization should have been a budget issue and if her hours were reduced, she should have been put into another position in order to maintain 40 hours and her benefits.

Mr. McHenry works for LL Bean as a senior business analyst. He joined the respondent Planning Board in 2008 and joined the Board of Selectmen in 2010. In June 2015, he became the Chair of the Board of Selectmen and calls and presides over the

meetings. He generally leaves the agenda to the current Town Manager, Paul First. Board members receive updates from the Town Manager more than once per week. The Board does not communicate regularly with the Town's attorney. More frequently, the Board communicates with the attorney through the Town Manager.

On October 30, Mr. McHenry learned from the agenda for the November 4 meeting that there would be an executive session at that meeting. The agenda provided, "Mr. Berry moved and Ms. Chase seconded a motion to move into Executive Session at 8:35 p.m. under 1 MRSA 405 (6) (A) Employment, assignment, and duties of employees." (Pet.'s Ex. 4 6.) He tried unsuccessfully to learn the topic for the executive session through an email exchange with Mr. Field. (Pet.'s Ex. 21.) Mr. McHenry also called the Town's attorney, Matthew Tarasevich, who stated that the language in the agenda was sufficient. Because, according to Mr. McHenry, the statute requires that the motion include the precise nature of the business to be conducted in executive session, Mr. McHenry wanted more precision at the meeting before the executive session. Mr. McHenry did not believe the motion was sufficiently precise and narrowly construed. At his deposition, he testified that the individual to be discussed had to be named in the motion. He opposed the executive session, along with Mr. Stevens. (Pet.'s Ex. 4 6.) As of the November 4 meeting, Mr. McHenry was not current on his FAA training as required.

The executive session memo was distributed to the five selectmen, Mr. Field, and Attorney Tarasevich. Attorney Tarasevich served as the referee to ensure the Board did not mention names and remained organized during the executive session. He did not speak often during the executive session and was not there to advise on legal matters before respondent.

10

Mr. McHenry believes it is not typical for the Town's attorney to attend Board meetings. Mr. McHenry did not recall seeing the attorney in an executive session previously and was surprised to see him on November 4. Generally, the Board had used executive session to review the Town Manager's performance in an effort not to embarrass him.

Prior to the November 4 executive session, nothing of significance was discussed regarding personnel performance and accountability. The executive session lasted approximately two hours. Mr. McHenry did not remember specifically discussing tasks. They discussed that the next manager would be more of a strategic planner than a hands on approach person. They needed a financial planner and discussed the positions outlined in Mr. Field's memo. (Pet.'s Ex. 3 2.) The administrative assistant position was also discussed, although that was not the main focus of the conversation. No offer of the financial director position was made to Mr. Field.

According to Mr. McHenry, when the decrease in the bookkeeper position's hours was discussed, petitioner's name was mentioned once or twice by accident but Attorney Tarasevich warned that was not permitted. Mr. McHenry recalled the discussion centered on boxes and not the people in the box; positions, not names, were discussed. The focus of the executive session was reorganization and not performance or roles. The general direction in which the Board was headed on the positions was addressed. Mr. McHenry was clear there was no discussion of petitioner as an individual or her performance in her job.

In hindsight, Mr. McHenry concluded the executive session was unnecessary and discussed that during the session. The conversation in the executive session was intense, almost heated. Mr. McHenry disagreed with the need to change the job structure. He restated his opposition during the open session.

11

During the executive session, Mr. McHenry recalled the Board discussed the outline of the motion to be made and that outline was refined in the public session. He stated:

> It would not be uncommon to have a discussion in executive session about a topic, and then make sure that you go back in the public session before taking action. The statute requires that all final – final action is what I think it says – has to be taken in public session. So kind of the general content can – is mostly held in executive, and then the actual motion is usually taken in public.

(Tr. 198-99.) The motion to reduce the bookkeeper position to part time was made in the public session.

Mr. McHenry recorded the public session after the executive session because, when the executive session ended, no one was present in the meeting room. (Pet.'s Ex. 5A.) The reporter and cable booth were gone. Mr. Field took notes. Typically the executive session is the last item on the agenda. Immediately after the meeting, Mr. McHenry forwarded the recording to a reporter at the Sun Journal.

Mr. McHenry did not recall Mr. Field stating that petitioner wanted to meet with the Board. If he had, Mr. McHenry was unsure whether the Board would have agreed. Pursuant to the grievance procedure, a department head can grieve to the Board but there was no precedent for a staff member to do so.

Between November 4 and November 18, Mr. McHenry was not aware that Mr. Field advocated to keep petitioner in her position. Mr. McHenry did not know whether individual Board members communicated with Mr. Field regarding implementing the new position; Mr. McHenry did not.

By November 18, some people in the Town were upset about respondent's action. (Pet.'s Ex. 7.) Mr. McHenry was aware petitioner was on medical leave as of November 18.

12

At the November 18 meeting, a series of motions were made to amend what had happened at the November 4 meeting. (Pet.'s Ex. 7.) Mr. McHenry realized because there was no discussion of particular employees, including petitioner, and only a discussion of the budget, no executive session was required and none took place at the November 18 meeting. A motion to create an ad hoc committee was withdrawn. A motion to reinstitute the bookkeeper position failed. Mr. McHenry withdrew a motion with regard to severance. He did not recall whether the email from Judith Meyer from the Sun Journal was read at the November 18 meeting. (Pet.'s Ex. 16A.)

By the December 2 meeting Mr. McHenry understood petitioner was no longer employed and had been paid by respondent everything that was owed. (Pet.'s Ex. 8.) He believed the bookkeeper position was vacant because Mr. Field waived the two-week notice period when petitioner resigned. The first time it occurred to Mr. McHenry that petitioner may have been an employee as of December 6 was when he heard that argument on the morning of his testimony at trial.

At the December 2 meeting, Board member Linda Chase moved to reconsider the November 4 vote to reduce the bookkeeper position to part time. (Pet.'s Ex. 9 2.) Mr. McHenry asked whether that motion brought "everything back to before the November 4 meeting." (Pet.'s Ex. 9 2.) Mr. Libby replied that was his understanding. The motion passed. Mr. Field asked for direction from the Board "in light of the current bookkeeper's resignation." (Pet.'s Ex. 9 2.) Mr. McHenry stated the "damage is done and the Town lost an employee." (Pet.'s Ex. 9 2.)

According to Mr. McHenry, the most pressing question at the December 26 meeting was what respondent was going to do as of January 2 with regard to a Town Manager. (Pet.'s Ex. 11.) No one had been hired for the Town Manager position. Petitioner was present at the meeting and asked for the bookkeeper position to be

13

returned to her. The Board responded that it was the responsibility of the Town Manager to fill the position. Mr. McHenry believed it would have been improper if the Board had put petitioner back in the bookkeeper position. He did not believe an executive session was required.

Motions with regard to a severance package for petitioner were made. Mr. McHenry's two motions failed. Ms. Chase's motion was approved. Someone commented that he did not know whether petitioner deserved anything because she had quit. Mr. McHenry responded that it was the Board's action that precipitated the situation and the Board should do something. Mr. McHenry understood that petitioner resigned because her hours were reduced at the November 4 meeting. Although he did not know why she did not resign until November 25, he felt there was a direct connection between the Board action on November 4 and petitioner's resignation. Petitioner did not accept the severance offer.

Mr. Field was respondent's Town Manager from 2008 until 2014. His business background includes serving as director of internal audit at Casco Northern Corp., business manager at Pine Tree Telephone, business and operations manager for a credit union, state auditor for the Elections and Ethics Commission, starter and manager of a money laundering unit at BankNorth, and consultant for his own accounting and business consulting firm.

As Town Manager, Mr. Field was required to do the training for FAA and was generally familiar with the requirements. His major responsibility was to respond to requests from the public for information. Executive session is prohibited by law except under certain circumstances and most of the Board sessions were open.

He met petitioner when he began his job in 2008. She was upset, asked questions about her job, and asked if Mr. Field was going to fire her. She said there had been

14

problems and she had not had support in her job. Mr. Field responded that he did not know her or her work. If there were issues, they would work together, which they did for five years, with no reprimands, demotions, or problems.

Petitioner's job included record keeping and preparing the annual audit and budget. Mr. Field and petitioner worked to improve the process.

In 2013, Mr. Field decided to retire. He prepared a draft needs analysis memo, in which he suggested some factors that would help in the operation of the Town. The memo was later revised. (Pet.'s Ex. 3.) He sent the memo to Mr. Libby, who said he would discuss the memo with the Board.

The final memo provides: "[a] change in the organizational structure is imperative." (Pet.'s Ex. 3 2.) In addition to restructuring the position of Town Manager, Mr. Field suggested that a "part-time Finance Director and a part-time bookkeeper could accomplish [managing the Town's finances, budget, CIP, and reporting] or a full-time Finance Director and out sourcing payroll could also work. An administrative assistant is also a highly desirable position." (Pet.'s Ex. 3 2.) Mr. Field did not consider petitioner an administrative assistant. After specified changes were implemented, Mr. Field believed the clerk's office could function with one full time and one or two part time employees. (Pet.'s Ex. 3 2.)

Mr. Field believed the Town Manager was wearing too many hats and that some members of the staff, including petitioner, were not equipped to, or not interested in, accepting delegated responsibility. Specifically, petitioner was not willing to take on additional responsibility.

A request for feedback from employees about the next Town Manager was sent to employees with their paycheck. (Pet.'s Ex. 2.) Mr. Field did not draft the request and did not know who did. Mr. McHenry believed the request was confidential because the

15

hope was that employees would be free to give insights and list what they believed the priorities were in order to inform the hiring of the next Town Manager and not be concerned about recrimination. The request was not a criticism of Mr. Field and Mr. McHenry did not connect Mr. Field's memo and the Board's request for input. The Field memo did not pertain to him and his performance.

The minutes of the meetings are typically made from notes taken by Sharlene Meyers and later transcribed. Mr. Field edits the minutes, which are sent to the Board for approval at the next meeting.

Mr. Field requested the executive session at the November 4 meeting. (Pet.'s Ex. 21.) Mr. Field believed the conversation during the executive session would be about him, his strengths and weaknesses, and he did not want that to occur during a public session. Executive session was required to maintain confidentiality. He knew he was not the favorite of all the Board members. Mr. McHenry was straightforward about not appreciating all of Mr. Field's skills; Mr. McHenry's evaluation of Mr. Field was substantially lower than that of the other Board members. (Pet.'s Ex. 9 5.) Mr. McHenry had requested executive session at other meetings to discuss his criticism of Mr. Field. Mr. McHenry had criticized Mr. Field during public sessions on occasion. Further, the memo from the Board to employees stated that all responses to the memo would be confidential and the responses would not remain confidential if discussed in an open session.

A week later, a reporter from the **Sun Journal** objected to the executive session. (Pet.'s Exs. 16, 16A.) Mr. Field shared the reporter's objections with the Board and with Attorney Tarasevich, who disagreed with the reporter's objection.

Mr. Field did not recall petitioner's name discussed during the November 4 executive session. Mr. McHenry began discussing the bookkeeper position and may

16

have mentioned petitioner's name but Attorney Tarasevich rose and said that could not be done. The discussion focused on the Town Manager's role and the administrative assistant position. Mr. Field did not recall discussion about creating a part time financial director and part time bookkeeper position. Mr. Field believed the discussion centered on a business issue and not a budget issue.[2] Mr. Field's needs analysis memo and other points raised by him were discussed.

The Board ended the executive session and Ms. Chase made her motion during the open session. Mr. Field was very much disappointed with the motion because Mr. Field did not consider the action outlined in the motion to be appropriate. Mr. Field said the motion was not discussed in executive session and, if it had been, Mr. Field would have expressed his displeasure.

On November 5, Mr. Field spoke with petitioner in the late afternoon. (Pet.'s Ex. 23.) She said she was surprised. He did not discuss the administrative assistant position with her because that would have been premature. He did nothing actively with petitioner except to offer help. He agreed petitioner asked to meet with the Board and he told her he would talk to the Board. He spoke to Mr. Libby, who said he would contact petitioner. Mr. Field did not know whether that was done.

During the remainder of the week, there was insufficient time to discuss all the options with petitioner. She was then out for two weeks on medical leave and Mr. Field did not think it appropriate to call her, although he did call regarding the problems with the invoices. After she resigned, he did not consider it his responsibility to explain options to her.

_____

[2] At his deposition in response to a leading question, Mr. Field agreed the discussion was a "business budget issue." (Ex. 20 83.) He later denied the discussion about positions was a budget issue. (Ex. 20 86.)

17

Although the financial issues discovered while petitioner was on medical leave were found to have been resolved, Mr. Field was concerned because he was never notified of the problems, which included a $28,000.00 discrepancy that remained for three months. He considered that a problem and a lack of communication. (Pet.'s Ex. 6.)

Mr. Field was present on November 25 when petitioner returned from medical leave. They discussed a number of issues. Mr. Field presented her with a memo, in which he advised her she was on probation. (Pet.'s Ex. 6.) She became very angry and stormed out of the building. Their meeting ended no later than 8:30 a.m. She resigned at 11:40 a.m.

Respondent's personnel policy provides:

> Employees voluntarily leaving the service of the Town are expected to provide at least 14 calendar days notice in writing. Failure to provide 14 days notice will result in the loss of accumulated sick and vacation leave. The Town Manager may make exceptions to this rule if extenuating circumstances warrant other consideration.

(Pet.'s Ex. 15 ¶ 16.) Mr. Field solicited Attorney Tarasevich's opinion regarding petitioner's resignation. Mr. Field then accepted petitioner's resignation and waived the two-week notice period, and considered her resignation effective November 25. (Pet.'s Ex. 8.) The personnel policy required two weeks notice because the pay period is two weeks. In lieu of work, however, he accepted the resignation. She was paid on November 26 and December 3 for the previous week, and on December 6. Petitioner agreed she was paid for two weeks during which she did not work. She was paid at a later time for accrued time. She turned in her keys on December 6 when she picked up the envelope with her final paycheck. Based on the manner in which she left on the morning of November 25 and the allegations in her email, Mr. Field concluded it would not be appropriate for her to be on the premises with other employees.

18

Mr. Field disputed that petitioner was an employee through December 6. He accepted her resignation on November 25 and she was paid in lieu of work. He did not accept her effective date. (Pet.'s Ex. 8.) The termination was effective immediately. She was no longer an employee and no longer on the payroll. Petitioner never asked to rescind her resignation and never rescinded it.

At the December 2 meeting, the Board moved to reconsider the November 4 action and restored the bookkeeper position. Mr. Field and petitioner were present. Petitioner did not suggest that she would be back on the job because the hours were restored. Executive session is required if the Board will discuss an employee. Petitioner was no longer an employee on December 2, according to Mr. Field, and she never requested executive session at the meetings on November 18, December 2, or December 26.

The bookkeeper position was posted, with a slight modification from the previous job description. Knowledge of GAAP and GASB was listed and a degree in accounting and business administration was preferred. (Pet.'s Ex. 10 1.) Mr. Field agreed the posting should have included a time deadline on the final date for applications, although the other posting on the site included a deadline of 4:00 p.m. (Pet.'s Ex. 10 2.) It is customary to provide the close of business as a time deadline on the due date.

At the December 26 meeting, the Board discussed severance pay for petitioner, and transitions and interim arrangements. (Pet.'s Ex. 11 2.) Mr. Field offered his assistance during the transition because no Town Manager had been hired. Item 4.6 evolved into a discussion of a consulting role and the Board discussed what Mr. Field would be paid and what he would do. Mr. Field was not concerned at this point that Mr. McHenry would say negative things because respondent needed assistance. After a

call to Attorney Tarasevich, the Board determined no executive session was needed to discuss a consultation contract. (Pet.'s Ex. 11 3.)

Petitioner attended the December 26 meeting. She asked the Board if it would "hire her back." (Pet.'s Ex. 11 1.) The Board informed her that she was required to speak to the Town Manager. The meeting ended after 4:00 p.m. The Town office closes at 4:00 p.m. Petitioner sent an email at 8:01 p.m. on December 26 in which she requested that respondent immediately reinstate her. (Pet.'s Ex. 12.) Mr. Field responded that she had submitted her application after the deadline on December 26 and it would not be considered. (Pet.'s Ex. 14.) Other applications were received after the close of business on the final date and those applicants were informed their applications were not timely and would not be considered.

Nathaniel Berry was a Maine Warden for 34 years. His term as a selectman for respondent ended in June 2015 and he did not run again for office.

Mr. Berry was present in the executive session on November 4, 2013. He recalled the Board discussed Mr. Field and his plan. (Pet.'s Ex. 3.) According to Mr. Berry, there was no discussion of the bookkeeper or financial director positions. Petitioner's name was brought up by Mr. McHenry but Attorney Tarasevich warned the Board that she could not be discussed because she was not in the room. No motion was made during executive session. The motion was made after return to the public session.

Neither Mr. Field nor Mr. Berry was aware Mr. McHenry recorded the public session after the executive session. (Pet.'s Ex. 5A.) When Mr. Berry stated, "We've discussed it to death," he was referring to the discussion in public session. He had learned not to refer to what was discussed during executive session after returning to the public session.

20

Attorney Tarasevich has been a partner at Bernstein Shur since 2006. He received his law degree from Northeastern. He previously worked in the municipal department of a Boston law firm and later at a firm in Portland. He specializes now in municipal and employment law and co-chairs the employment group at Bernstein Shur. His major clients are municipalities. He is also co-chair of the Maine State Bar Association Municipal Law Section.

In November 2013, Attorney Tarasevich received inquiries regarding respondent's November 4 Board meeting. Mr. McHenry called and, without identifying himself, asked general questions about executive session practice but did not provide specific information. Attorney Tarasevich provided general responses because he did not know what Mr. McHenry was talking about. Because Attorney Tarasevich thought it unusual to receive a call from a member of the Board as opposed to from the Chair of the Board, Attorney Tarasevich called the Town Manager. Mr. Field explained that issues about him and his resignation were on that evening's agenda. Mr. Libby then called Attorney Tarasevich and asked him to attend the meeting. Attorney Tarasevich was told the decision about going into executive session had been made and he was not asked for his advice.

Attorney Tarasevich attended the November 4 meeting. He recalled that the executive session included a wide ranging discussion about Mr. Field, his retirement, his performance, his duties, and the fact that the search for a new Town Manager had stalled. Because of concerns that a new Town Manager would not be in place in time and respondent would have no one to handle financial matters, there was an effort to convince Mr. Field not to leave and a discussion of his duties if he stayed. According to Attorney Tarasevich, the meeting was permeated with a feeling of desperation. There

were many applications for the Town Manager position but the Board was not happy with them.

Petitioner's performance was not discussed during the executive session. Attorney Tarasevich recalled three times when the discussion got off track and three employees were mentioned, including petitioner once by Mr. McHenry. Attorney Tarasevich stopped the conversations each time and finally stood up and advised that they were in executive session to discuss Mr. Field, who was the only employee discussed. The Board also discussed the need to reorganize the entire office.

Attorney Tarasevich received an email from Mr. Field inquiring whether the executive session was proper because of an objection from a reporter. Attorney Tarasevich responded. (Pet.'s Ex. 16.) Pursuant to section 405(6)(a), personnel issues and not budget issues may be discussed in executive session. If the budget had been discussed, Attorney Tarasevich would have stopped the discussion and told the Board to return to public session, which he did not do. Attorney Tarasevich disagreed that the Board discussed the budget during the executive session and that the executive session was not necessary. The reporter's email to Mr. Field, in which she alleged "cutting job back to half time for budget purposes," did not happen during executive session. (Pet.'s Ex. 16A.)

CONCLUSIONS OF LAW

1. FAA, 1 M.R.S. § 405

The purpose of the FAA is to ensure that deliberations in public proceedings are conducted openly and to prevent "clandestine meetings" without "proper notice and ample opportunity" for public attendance. 1 M.R.S. § 401 (2015). The FAA requires that all public proceedings be open to the public, and any exceptions to this requirement

22

must be "narrowly construed." 1 M.R.S. § 403(1) (2015); <u>Underwood v. City of Presque Isle</u>, 1998 ME 166, ¶ 16, 715 A.2d 148.

The Act does allow private executive sessions for:

A. Discussion or consideration of the employment, appointment, assignment, duties, promotion, demotion, compensation, evaluation, disciplining, resignation or dismissal of an individual or group of public officials, appointees or employees of the body or agency or the investigation or hearing of charges or complaints against a person or persons subject to the following conditions:

> 1) An executive session may be held only if public discussion could be reasonably expected to cause damage to the individual's reputation or the individual's right to privacy would be violated;

> 2) Any person charged or investigated must be permitted to be present at the executive session if that person so desires;

> 3) Any person charged or investigated may request in writing that the investigation or hearing of charges or complaints against that person be conducted in open session. A request, if made to the agency, must be honored; and

> 4) Any person bringing charges, complaints or allegations of misconduct against the individual under discussion must be permitted to be present.

This paragraph does not apply to discussion of a budget or budget proposal.

1 M.R.S. § 405(6)(A) (2015). "[A] public body charged with violating the terms of the FAA during an executive session has the burden of proving that its actions during the executive session complied with an exception to the FAA's opening meeting requirement." <u>Underwood,</u> 1998 ME 166, ¶ 19, 715 A.2d 148.

<u>November 4 Meeting Executive Session</u>

The court finds the testimony of the witnesses who were present at the November 4 meeting to be credible. There were, of course, differences in recollection

about a meeting that took place two years before the witnesses' testimony. The court attributes that to failure of recollection or misrecollection and not intentional falsehood. The court relies especially on the testimony of Attorney Tarasevich. He had no interest in the substance of the meeting; his job was to ensure the statute was followed. He performed that job.

No witness who was present testified that petitioner or her individual performance in the bookkeeper position was discussed during the November 4 meeting executive session. When an individual person's name was mentioned in error, Attorney Tarasevich explained that was not appropriate and refocused the Board; he rose from his chair on one occasion to emphasize the point. As Mr. McHenry stated, the discussion focused on "boxes and not the people in the box; positions, not names" in an effort to consider Mr. Field's suggestions for realignment of jobs going forward. In fact, Mr. McHenry, a witness favorably disposed to petitioner, determined in hindsight that the executive session was unnecessary and made his opinion known to the Board. Any discrepancies among the testimony of Mr. McHenry, Mr. Field, Mr. Berry, and Attorney Tarasevich do not affect the consistent, credible testimony that petitioner and her performance were not discussed during executive session.

Respondent has shown the executive session was held for, and limited to, the authorized purpose of discussing Mr. Field's duties and performance and the potential change in job structure and reorganization as outlined in his needs analysis memo. Petitioner was not a person "charged or investigated" who was entitled to notice and to be present at the executive session. 1 M.R.S. § 405(6)(A)(2). The discussion did not include matters not identified in the motion to go into executive session. 1 M.R.S. § 405(5). No final approvals were made during the executive session. 1 M.R.S. § 405(2). The potential for damage to Mr. Field's reputation or right to privacy justified the

24

executive session. 1 M.R.S. § 405(6)(A)(1); see Hughes Bros. v. Town of Eddington, 2016 ME 13, ¶ 23, 130 A.3d 978.

December 2 Meeting

The action taken at the December 2 meeting did not "bring everything back to before the November 4th meeting." (Pet.'s Ex. 9 2.) The action maintained the status quo until a new Town Manager was hired and a reevaluation and possible reorganization could occur. (Pet.'s Ex. 9 2.)

On November 12, after learning days before that her hours would be reduced, petitioner took a two-week medical leave. On November 25, after being confronted with accounting discrepancies that, although resolved, were never reported to the Town Manager, petitioner had become angry and stormed out of her place of employment. She resigned three hours later by email. In her resignation, she alleged harassment and a hostile work environment. (Pet.'s Ex. 8 2.) She never filed a written grievance and never rescinded her resignation.

Mr. Field accepted her resignation as of the date tendered, told petitioner she need not work the two-week notice period, she would be paid for the two-week period, November 25 was her last day of employment, and she was to drop off her keys that day. (Pet.'s Ex. 8 1-2.) She accepted these terms and replied she would drop off the keys when her check was ready. (Pet.'s Ex. 8 1.) Petitioner did not return to work from November 25 through December 6. She continued to receive paychecks pursuant to respondent's pay schedule. (Records attached to Pet.'s Mem.) She was paid subsequently an additional amount owed to her for accrued time.

In petitioner's case, Mr. Field made an exception to the usual notice policy, as he was permitted to do pursuant to respondent's personnel policy. Petitioner knew reinstatement of the bookkeeper position would be revisited on December 2 but

25

resigned anyway. Although she attended the December 2 meeting, she did not rescind her resignation, did not address the Board and request reinstatement, and did not return to work the following work day. At her deposition, she admitted she knew she had to reapply for the bookkeeper position.

Based on these facts, it was not required that, and would have been ill-advised for, the Board, sua sponte, to reinstate petitioner to the bookkeeper position on December 2.

### December 26 Meeting

When petitioner requested reinstatement at the December 26 meeting, the Board referred her to Mr. Field because he, not the Board, hires and manages the bookkeeper position. (Pet.'s Ex. 11 1.) Further, the job had been posted and applications had been received. Although the time deadline was not included on the job posting, the usual practice of respondent was to impose the close of business as the deadline on the final day for applications. (Pet.'s Ex. 10.) Petitioner's application, and those of other applicants who submitted their applications after the close of business on December 26, were not considered.

There is no explanation on this record for petitioner's failure to apply for the bookkeeper position during the listing period after December 2 and before December 26. As discussed, petitioner admitted she knew she had to reapply for the bookkeeper position.

In addition, the job posting required a cover letter and resume, added the requirement of knowledge of GAAP and GASB, and stated a preference for a degree in accounting or business administration. Based on this record, petitioner submitted a letter in which she requested immediate reinstatement. No resume was attached to the

letter. Whether she had knowledge of GAAP and GASB or a degree in accounting or business administration is unknown on this record.

Based on these facts, the Board was not authorized or required to reinstate petitioner to the bookkeeper position at the December 26 meeting and Mr. Field was not required to consider her untimely and incomplete application for that position.

Respondent's failure to reinstate petitioner to the bookkeeper position at the December 2 and December 26 meeting was not an abuse of discretion or a violation of her administrative due process. Aydelott v. City of Portland, 2010 ME 25, ¶ 10, 990 A.2d 1024 (Rule 80B); Yates v. Town of Southwest Harbor, 2001 ME 2, ¶ 10, 763 A.2d 1168 (Rule 80B); Sproul v. Town of Boothbay Harbor, 2000 ME 30, ¶ 8, 746 A.2d 368 (Rule 80B); Hale v. Petit, 438 A.2d 226, 230-31 (Me. 1981) (Maine Administrative Procedure Act).

Motion in Limine

In its motion to dismiss, respondent addressed the issue of the timeliness of the appeal of petitioner's FAA claim. (Mot. Dismiss 5.) In that decision, the court concluded that count I, which included petitioner's FAA claim, was not dismissed. (Id. at 13.)[3]

Respondent apparently understood that the FAA claim was still part of the case because it then filed a motion for summary judgment, which included a discussion of the FAA claim.[4] (Resp.'s Mot. Summ. J. 5-10.) The timeliness issue was not addressed further in respondent's motion for summary judgment. In the order on respondent's

[3] Count I also included petitioner's argument that she should have been reinstated at the December 2 meeting. Respondent did not address this argument in its motion to dismiss or in its motion for summary judgment.
[4] In addition, respondent's reply to petitioner's opposition to the motion for summary judgment acknowledges: "Sacco's appeal is based on an alleged violation of the Freedom of Access Act . . . .". (Resp.'s Reply 1.)

27

motion for summary judgment, the court stated, "Summary judgment is inappropriate because petitioner has raised an issue of material fact as to whether respondent Town complied with section 405 based on the content of the executive session and whether notice to petitioner was required." (Order Resp.'s Mot. Summ. J. 9.)

Notwithstanding this procedural history,[5] in respondent's motion in limine, filed November 30, 2015, respondent argued: "The Town of New Gloucester believes that the only remaining issue for trial concerns the 80B appeal by Sandra Sacco challenging the decision by the Town not to consider her application for the position of bookkeeper which she sent to the Town Manager at 8:01 p.m. on December 26, 201[3]." (Resp.'s Mot. Limine 1.) Respondent argues further in the motion in limine:

> In its decision on the Town's motion for summary judgment, the Court has indicated that Ms. Sacco's 80B appeal consists also of her claims that the Town violated certain provisions of the Freedom of Access Act. *Sacco v. Town of New Gloucester*, No. AP-14-008, Order on Motion for Summary Judgment at p. 10 (November 10, 2015). However, because these claims were not brought in a timely fashion, the Court lacks jurisdiction to entertain a challenge to these executive sessions in the context of this appeal. To the extent that the earlier decisions of the Court have not clarified this issue, the Town of New Gloucester seeks a ruling on this point.

(Resp.'s Mot. Limine 2.)

Petitioner's FAA claim is timely because it alleges a failure to act. A Rule 80B appeal must be filed within 30 days after notice of an action or refusal to act, but "in the event of a failure to act, within six months after expiration of the time in which action should reasonably have occurred." M.R. Civ. P. 80B(b). Petitioner's claim is not that respondent violated the FAA by discussing her employment in the executive session,

---

[5] Respondent also argues in its memorandum that petitioner's claim regarding the November 4 executive session is moot because of the Board's action on December 2. (Resp.'s Mem. 12-13.) The court addressed that argument in the order on respondent's motion for summary judgment. (Order Mot. Summ. J. 8.)

which is permitted if she is given notice.[6] She argues instead that respondent failed to notify her of her right to be present at the executive session.[7] Petitioner filed her complaint on February 7, 2014, well within the six-month period. See Advanced Med. Research Found. v. Town of Cushing, 1988 Me. Super. LEXIS 91, at *8 (Apr. 1, 1988) ("[W]here there is a rational interpretation of the facts and the law which will allow the matter to be determined on the merits, that course of action should be followed.").

The entry is

Respondent's Motion in Limine is DENIED.

Respondent did not violate 1 M.R.S. § 405 at the Board of Selectmen Meeting on November 4, 2013.

Respondent's Failure to Reinstate Petitioner to the Bookkeeper Position on December 2, 2013 and on December 26, 2013 is AFFIRMED. M.R. Civ. P. 80B(c).

Date: June 7, 2016

Nancy Mills
Justice, Superior Court

---

[6] Petitioner's claim at one point included allegations that respondent should have entered executive session at the November 18, December 2, and December 26 meetings in order to protect her reputation and privacy. (Pet.'s Opp'n Mot. Summ. J. 12-13.)

[7] Respondent characterizes petitioner's claim in this way. (See Resp.'s Mot. Summ. J. 9 ("Sandra Sacco does not necessarily challenge that the discussion violated the FAA in any respect other than she was not invited to attend and respond to the discussion regarding the restructuring of the department as it pertained to her.").)

STATE OF MAINE                                                    SUPERIOR COURT
CUMBERLAND, ss                                                    CIVIL ACTION
                          STATE OF MAINE
                          Cumberland ss. Clerk's Office            Docket No. AP-14-008 ✓

SANDRA SACCO,

            Petitioner                NOV 12 2015

v.                            RECEIVED              ORDER ON MOTION FOR
                                                                 SUMMARY JUDGMENT
TOWN OF NEW GLOUCESTER

            Respondent

        Before the court is (1) respondent's motion for summary judgment on petitioner's amended complaint and (2) respondent's motion to strike lay opinion testimony in petitioner's opposition to summary judgment. For the following reasons, respondent's motion for summary judgment is granted in part and denied in part and its motion to strike lay opinion testimony is granted.

FACTS

        Petitioner Sandra Sacco, age 59, began working for respondent Town of New Gloucester in 1988. (Pl.'s Addt'l S.M.F. ¶ 1.) She served as the Deputy Treasurer/Bookkeeper (bookkeeper) for the last seven years of her employment, until she resigned on November 25, 2013.[1] (Pl.'s Addt'l S.M.F. ¶¶ 5, 28.) She anticipated retirement at age 64 or 65. (Pl.'s Addt'l S.M.F. ¶ 17.) She believed she had a right to continued employment and could only be terminated for just cause. (Pl.'s Addt'l S.M.F. ¶ 17.) The events leading to her resignation are the subject of this suit.

        In October 2013, the Town Manager, Sumner Field, announced that he was retiring effective January 2, 2014. (Pl.'s Addt'l S.M.F. ¶ 7.) Mr. Field submitted a memorandum to the Chairman of the Board of Selectmen, Steve Libby, in which he

---

[1] In her amended complaint, petitioner states that she served as the bookkeeper for the last ten years of her employment. (Am. Compl. ¶ 8.)

1

suggested, among other things, that respondent Town hire a finance director. (Def.'s S.M.F. ¶¶ 3-4.) The parties dispute Mr. Field's motivation for submitting the memorandum. Respondent Town claims that Mr. Field submitted it in response to a request by the Board of Selectmen (Board) for input from employees regarding factors to consider in selecting a new town manager. (Def.'s S.M.F. ¶¶ 2-3.) Petitioner claims that Mr. Field submitted the memorandum prior to the Board's request. (Pl.'s Opp. S.M.F. ¶¶ 2-3.)

The Board held a meeting on November 4, 2013. (Pl.'s Addt'l S.M.F. ¶ 12.) At this meeting, Mr. Field requested that the Board go into executive session. (Def.'s S.M.F. ¶ 5.) The parties dispute the topic of discussion during the executive session. Petitioner asserts that the Board discussed reducing the bookkeeper's hours. (Pl.'s Opp. S.M.F. ¶¶ 5-6, 8-10, 12.) Respondent Town asserts that the Board discussed the creation of the finance director position and respondent Town's organizational structure and did not discuss reducing the bookkeeper's hours. (Def.'s S.M.F. ¶¶ 5-6, 8-10, 12.) The record does not include a transcript of the executive session.

When the Board came out of executive session, a motion was made to reduce the bookkeeper position from 40 hours per week to 24 hours per week and to hire an interim part-time finance director. (Def.'s S.M.F. ¶ 13.) As a result of the reduction in the bookkeeper's hours, the benefits for the position were eliminated. (Def.'s S.M.F. ¶ 19.) The reduction was scheduled to take effect in January 2014. (Def.'s S.M.F. ¶ 16.) Petitioner was not informed of the meeting and had no prior notice that her job duties would be a topic of discussion. (Pl.'s Addt'l S.M.F. ¶ 16.)

On November 5, 2013, Mr. Field informed petitioner of the Board's decision. (Pl.'s Addt'l S.M.F. ¶ 15.) Later that day, and again the next day, petitioner asked Mr. Field for a meeting with the Board. (Pl.'s Addt'l S.M.F. ¶ 19.) A meeting was never

arranged. (Pl.'s Opp. S.M.F. ¶ 40.) Petitioner claims that Mr. Field told her he would arrange a meeting with Mr. Libby but never did. (Pl.'s Opp. S.M.F. ¶ 40.) Respondent Town claims that Mr. Field called Mr. Libby to arrange a meeting and informed petitioner that Mr. Libby would tell Mr. Field the meeting time. (Def.'s Reply to Pl.'s Addt'l S.M.F. ¶ 19.) The parties also dispute whether petitioner filed a grievance with the Board pursuant to respondent Town's personnel policy. Respondent Town claims that petitioner did not file a grievance. (Def.'s S.M.F. ¶¶ 47, 49.) Petitioner characterizes her attempts to meet with the Board as grievances and claims that Mr. Field thwarted them. (Pl.'s Opp. S.M.F. ¶ 49.)

Petitioner became very distressed about finances, health care coverage, and retirement. (Pl.'s Addt'l S.M.F. ¶ 18.) She sought medical help for stress, and her physician recommended that she be excused from work for two weeks. (Pl.'s Addt'l S.M.F. ¶ 20.) On November 11, 2013, petitioner gave Mr. Field a note from her physician excusing her from work. (Def.'s S.M.F. ¶ 25.) Petitioner was approved for a medical leave from November 11, 2013 to November 24, 2013. (Def.'s S.M.F. ¶ 27.)

While petitioner was on medical leave, Mr. Field became aware of issues regarding her work performance. (Def.'s S.M.F. ¶ 28.) Mr. Field drafted a memo to petitioner that outlined the issues he had discovered and informed her she was on probation for 60 days. (Def.'s S.M.F. ¶ 29.) Petitioner denies these work performance issues and claims Mr. Field fabricated them. (Pl.'s Opp. S.M.F. ¶ 28.) When petitioner returned to work on November 25, 2013, Mr. Field informed her that she was on probation. (Pl.'s Addt'l S.M.F. ¶ 25; Def.'s S.M.F. ¶ 31.) Petitioner mistakenly believed that she was being suspended without pay. (Pl.'s Addt'l S.M.F. ¶ 27.) She became upset and left work. (Pl.'s Addt'l S.M.F. ¶ 27.) Later that day, she sent an email to Mr. Field

3

tendering her resignation. (Pl.'s Addt'l S.M.F. ¶ 28.) Mr. Field accepted her resignation that afternoon. (Def.'s S.M.F. ¶ 35.)

On December 2, 2013, the Board held a meeting and reversed its decision to reduce the bookkeeper's hours. (Pl.'s Addt'l S.M.F. ¶ 33.) Respondent Town then posted an announcement for applications for the bookkeeper position. (Pl.'s Addt'l S.M.F. ¶ 36.) The application deadline was December 26, 2013. (Pl.'s Addt'l S.M.F. ¶ 37.) The announcement did not include a specific time in the deadline. (Pl.'s Addt'l S.M.F. ¶ 37.) Petitioner was aware of the announcement and understood that she would have to apply for the position in order to get her job back. (Def.'s S.M.F. ¶ 53.)

On December 26, 2013, the Board held a meeting to discuss, among other things, whether to provide petitioner with a severance package. (Pl.'s Addt'l S.M.F. ¶ 39.) Petitioner attended the meeting and requested that respondent Town reinstate her to her former position. (Pl.'s Addt'l S.M.F. ¶ 41.) The Selectmen informed her that only the Town Manager could reinstate her. (Pl.'s Addt'l S.M.F. ¶ 41.) At 8:01pm on December 26, petitioner sent an email to Mr. Field and requested that he reinstate her. (Def.'s S.M.F. ¶ 57.) He responded that her letter, which he characterized as an application, was received after the deadline and would not be considered. (Pl.'s Addt'l S.M.F. ¶ 44.)

PROCEDURAL HISTORY

On February 7, 2014, petitioner filed her complaint against respondent Town. She alleged five causes of action: count I, Rule 80B review of the Town's actions; count II, violation of due process under 42 U.S.C. § 1983; count III, equitable estoppel; count IV, promissory estoppel; and count V, interference with prospective economic advantage. On March 13, 2014, the court granted petitioner's motion to join the independent claims with the Rule 80B action.

4

Respondent Town filed a motion to dismiss on March 20, 2014. On April 15, 2014, petitioner filed an opposition to the motion to dismiss as to counts I through IV and agreed to dismiss count V. On the same day, petitioner filed a motion to amend the complaint and an amended complaint, in which she added Mr. Field as a respondent. She reasserted count I, Rule 80B review, against respondent Town; count II, violation of due process under 42 U.S.C. § 1983, count III, equitable estoppel, and count IV, promissory estoppel, against both respondents; count V, interference with prospective economic advantage, against respondent Field; and added count VI, intentional infliction of emotional distress, and count VII, negligent misrepresentation, against both respondents. On April 22, 2014, petitioner filed a motion for a trial of the facts. M.R. Civ. P. 80B(d).

On October 1, 2014, the court granted petitioner's motion for a trial of the facts and motion to amend the complaint. The court granted respondents' motion to dismiss the complaint in part and dismissed counts III, IV, V, and VII of the amended complaint.

On July 15, 2015, respondent Town moved for summary judgment. On August 31, 2015, the parties stipulated to dismissal with prejudice of count VI as to both respondents[1] and dismissal of count II as to respondent Field only.[2] The remaining counts in the amended complaint are counts I and II against respondent Town only. On September 1, 2015, petitioner filed an opposition to respondent Town's motion for summary judgment. On September 11, 2015, respondent Town filed a reply to

---

[1] Because the parties have dismissed petitioner's only tort claim, the court does not address respondent Town's argument that the Town is immune under the Maine Tort Claims Act. (Def.'s Mot. Summ. J. 18-19.)

[2] Because the parties have dismissed all counts against Mr. Field, the court does not address respondent Town's argument that Mr. Field is entitled to discretionary function immunity. (Def.'s Mot. Summ. J. 17-18.)

5

petitioner's statement of additional facts and moved to strike lay opinion testimony in petitioner's opposition.

DISCUSSION

## 1. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case[,]" and a genuine issue of material fact "exists when the factfinder must choose between competing versions of the truth." Dyer v. Dep't of Transp., 2008 ME 106, ¶ 14, 951 A.2d 821 (citation omitted). "Even when one party's version of the facts appears more credible and persuasive to the court, any genuine factual dispute must be resolved through fact-finding, regardless of the nonmoving party's likelihood of success." Estate of Lewis v. Concord Gen. Mut. Ins. Co., 2014 ME 34, ¶ 10, 87 A.3d 732.

### B. Rule 80B Appeal

Petitioner challenges respondent Town's action under the Freedom of Access Act (FAA), 1 M.R.S. § 405, 30-A M.R.S. § 2605(4), and 30-A M.R.S. § 2606.

a) Trial of the Facts

Petitioner first argues that summary judgment is inappropriate because a trial of the facts has not occurred. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 9-10.) The court granted petitioner's motion for a trial of the facts on October 1, 2014 and has not yet held the trial. The court is not precluded from deciding respondent's motion for summary judgment at this time. See Blumberg v. Town of Vassalboro, 2006 Me. Super. LEXIS 212, at *3 (Sept. 26, 2006) ("Although the town had earlier brought its motion for a trial of the facts, which was granted, this would not prevent the town from testing Blumberg's

6

position by bringing the subsequent [summary judgment] motion supported by proper affidavits."); Cook v. Lisbon Sch. Comm. & Sch. Union No. 30, 1995 Me. Super. LEXIS 398, at *13-15 (Nov. 8, 1995) (granting defendants' motion for summary judgment while plaintiff's motion for a trial of the facts was pending).

In addition, any evidence required to substantiate petitioner's claims under sections 2605 and 2606 should have been discovered by petitioner by the time she responded to the motion for summary judgment. Discovery ended on September 20, 2014. Petitioner filed her response to the motion for summary judgment on September 1, 2014, and she made no request to conduct additional discovery before the motion was decided. For these reasons, the court will consider respondent's motion for summary judgment.

### b) FAA, 1 M.R.S. § 405

Petitioner argues that respondent Town violated 1 M.R.S. § 405 by failing to notify her of, and provide her an opportunity to be heard at, the November 4 executive session and by failing to enter executive session at all times when the bookkeeper position was discussed at the November 18, December 2, and December 26 meetings due to these discussions' effect on her reputation and right to privacy.[·] (Am. Compl. ¶ 42; Pl.'s Opp'n to Def.'s Mot. Summ. J. 11-14.) Respondent Town counters that petitioner's argument is rendered moot by the Board's December 2 decision to reverse its November 4 decision. (Def.'s Mot. Summ. J. 6-8.) The Town also argues that the Board's actions complied with section 405 because it voted to approve its decision

---

[·] Respondent Town argues that petitioner raises her argument about the November 18, December 2, and December 26 meetings too late because this argument does not appear in her amended complaint. (Def.'s Reply Mot. Summ. J. 3.) Respondent Town's reliance on Burns v. Architectural Doors & Windows is misplaced because, in that case, the Law Court held that the Superior Court properly prevented the plaintiff from producing evidence at trial on causes of action not alleged in the complaint. 2011 ME 61, ¶¶ 21-22, 19 A.3d 823. Here, petitioner alleges additional facts consistent with the Rule 80B cause of action in her amended complaint. See 2 Harvey, Maine Civil Practice § 8:1 at 354 (3d ed. 2011) ("[T]he pleader is not bound by a particular theory if the complaint can reasonably be found to state another one.").

during the public session and it did not need to notify petitioner of the November 4 meeting because she was not being charged or investigated. (Def.'s Reply Mot. Summ. J. 3; Def.'s Mot. Summ. J. 9.)

### i. Mootness

A court may decide only a case that presents a justiciable controversy. <u>Campaign for Sensible Transp. v. Me. Tpk. Auth.</u>, 658 A.2d 213, 215 (Me. 1995). A case does not present a justiciable controversy if the issue between the parties has become moot. <u>Id</u>. To determine whether the issue is moot, the court looks to "whether sufficient practical effects flowing from resolution of the litigation remain so as to justify applying limited judicial resources." <u>Foster v. Bloomberg</u>, 657 A.2d 327, 329 (Me. 1995).

Respondent Town is incorrect in its assertion that petitioner's claim is moot because respondent Town mischaracterizes the relief petitioner seeks. She recognizes that the December 2 decision restored the bookkeeper position to full time, and she seeks to be reinstated into that position. (Pl.'s Opp. S.M.F. ¶¶ 51, 53; Am. Compl. ¶ 47.) Petitioner has not been reinstated, and a resolution of this case in her favor could have that effect if the court reverses and remands the case to the Board and the Board or Town Manager orders reinstatement. In addition, petitioner challenges the Board's decision not to enter executive session on November 18, December 2, and December 26 as a violation of her privacy. This claim is not affected by the Board's decision to restore the bookkeeper position to full time. The Rule 80B appeal presents a justiciable controversy.

### ii. Compliance with FAA, 1 M.R.S. § 405

The purpose of the FAA is to ensure that deliberations in public proceedings are conducted openly and to prevent "clandestine meetings" without "proper notice and ample opportunity" for public attendance. 1 M.R.S. § 401 (2014).

8

In line with this purpose, the FAA requires that all public proceedings be open to the public, and any exceptions to this requirement must be "narrowly construed." 1 M.R.S. § 403(1) (2014); Underwood v. City of Presque Isle, 1998 ME 166, ¶ 16, 715 A.2d 148. The Act does allow private executive sessions for:

A. Discussion or consideration of the employment, appointment, assignment, duties, promotion, demotion, compensation, evaluation, disciplining, resignation or dismissal of an individual or group of public officials, appointees or employees of the body or agency or the investigation or hearing of charges or complaints against a person or persons subject to the following conditions:
   1) An executive session may be held only if public discussion could be reasonably expected to cause damage to the individual's reputation or the individual's right to privacy would be violated;
   2) Any person charged or investigated must be permitted to be present at the executive session if that person so desires;
   3) Any person charged or investigated may request in writing that the investigation or hearing of charges or complaints against that person be conducted in open session. A request, if made to the agency, must be honored; and
   4) Any person bringing charges, complaints or allegations of misconduct against the individual under discussion must be permitted to be present.

1 M.R.S. § 405(6)(A) (2014). "[A] public body charged with violating the terms of the FAA during an executive session has the burden of proving that its actions during the executive session complied with an exception to the FAA's opening meeting requirement." Underwood, 1998 ME 166, ¶ 19, 715 A.2d 148. A key factual dispute in this case is whether respondent Town discussed petitioner's employment and whether it was investigating her during the November 4 executive session. Mr. Field has asserted conflicting explanations for the reasons behind, and the content of, the executive session. (Pl.'s Opp. S.M.F. ¶¶ 10, 12.) Summary judgment is inappropriate because petitioner has raised an issue of material fact as to whether respondent Town complied with section 405 based on the content of the executive session and whether notice to petitioner was required.

Respondent Town argues further that because the reduction of the bookkeeper's hours took place in public session, petitioner has no grounds for appeal pursuant to section 409. Respondent Town's reliance on Cook v. Lisbon Sch. Comm. is misplaced because the plaintiff in that case sought review under 1 M.R.S. § 409, whereas petitioner seeks review under Rule 80B. 682 A.2d 672, 678 (Me. 1996). In Cook, plaintiff argued that the school committee violated section 405(6)(A) by discussing her employment in executive sessions without providing her the opportunity to attend these sessions. Id. The committee defended on the ground that it had not discussed allegations against plaintiff during the executive session. Id. The Law Court held that the dispute as to the content of discussion in the executive session was immaterial because section 409 allows the Superior Court to declare the committee action null and void only if the committee approves the action in the executive session, and there was no dispute that the committee had approved the dismissal during the public session. Id.

Despite the similarities between the two cases, the difference here is that petitioner challenges the Board's action under Rule 80B, which allows the Superior Court to affirm, reverse, modify, or remand a broad array of government action. M.R. Civ. P. 80B(c). This review is not confined to the narrower review under section 409 of whether the Board improperly approved the action in executive session. See M.R. Civ. P. 80B(a) (allowing review of any government action provided by statute or otherwise available by law). The fact that the Board did not approve the reduction in executive session is not fatal to this appeal.

c) 30-A M.R.S. § 2605(4) and 30-A M.R.S. § 2606

Petitioner argues that respondent Town violated 30-A M.R.S. § 2605(4), which prohibits conflicts of interest, and 30-A M.R.S. § 2606, which prohibits certain municipal appointments. (Am. Compl. ¶ 42.) She bases these claims on allegations that Mr. Field

10

and Mr. Libby conspired to reduce the hours for the bookkeeper position and then to appoint Mr. Field as the finance director. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 15.) Respondent Town counters that petitioner has not alleged facts to support these allegations. (Def.'s Mot. Summ. J. 10-11.)

  i.    30-A M.R.S. § 2605(4)

Section 2605(4) makes voidable municipal proceedings involving negotiations or awards of contracts in which a party has a direct or indirect pecuniary interest. 30-A M.R.S. § 2605 (2014). "Direct or indirect pecuniary interest" is defined as:

> In the absence of actual fraud, an official of a body of the municipality, county government or a quasi-municipal corporation involved in a question or in the negotiation or award of a contract is deemed to have a direct or indirect pecuniary interest in a question or in a contract where the official is an officer, director, partner, associate, employee or stockholder of a private corporation, business or other economic entity to which the question relates or with which the unit of municipal, county government or the quasi-municipal corporation contracts only where the official is directly or indirectly the owner of at least 10% of the stock of the private corporation or owns at least a 10% interest in the business or other economic entity.

30-A M.R.S. § 2605(4). Petitioner argues the fact that Mr. Field and Mr. Libby worked together on Mr. Field's memo for weeks leading up to the executive session raises an inference that they were planning to appoint Mr. Field as the finance director. (Pl.'s Opp. S.M.F. ¶¶ 20-21.) In support of this assertion, she relies on Selectman Joshua McHenry's opinion that Mr. Field and Mr. Libby "orchestrated" a plan to reduce the bookkeeper's hours. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 15.) Even if this were true, petitioner has not alleged that either Mr. Field or Mr. Libby has any relationship to a private corporation, business, or other economic entity related to any contract, a fact necessary to establish a pecuniary interest under section 2605(4). Plaintiff has not raised a genuine issue of material fact as to whether respondent Town violated 30-A M.R.S. § 2605(4).

ii.    30-A M.R.S. § 2606

Section 2606 provides:

> No municipal officer, during the term for which that officer has been elected and for one year thereafter, may be appointed to any civil office of profit or employment position of the municipality, which was created or the compensation of which was increased by the action of the municipal officers during the officer's term.

30-A M.R.S. § 2606 (2014). Although unclear, it appears petitioner argues that Mr. Field and Mr. Libby were planning to appoint Mr. Field to the finance director position, which would violate this statute because he participated in creating that position. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 15.) Petitioner does not allege that Mr. Field was actually appointed to this or any other position. Respondent Town asserts that Mr. Field was not interested in assuming the finance director position, and that this position was never created. (Def.'s S.M.F. ¶ 20; Def.'s Mot. Summ. J. 10.) Even if Mr. Field and Mr. Libby "orchestrated the situation," there is no dispute as to whether Mr. Field was appointed to the finance director position. The record reflects he simply worked an additional six weeks as Town Manager at the Board's request. (Def.'s S.M.F. ¶ 61.) Petitioner has not raised a genuine issue of material fact as to whether respondent Town violated 30-A M.R.S. § 2606.

C.    Section 1983 Claim

Petitioner claims that the Town violated her due process rights under 42 U.S.C. § 1983. (Am. Compl. ¶¶ 44-47.) That section provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

12

42 U.S.C. § 1983 (2012). Respondent Town argues that the Rule 80B appeal precludes her section 1983 claim because the Rule 80B appeal provides adequate review. (Def.'s Mot. Summ. J. 13-14.) Respondent Town also argues it did not violate petitioner's due process rights because she voluntarily resigned and because an exception to due process exists where a decision to affect employment is due to municipal reorganization. (Def.'s Mot. Summ. J. 12, 15.)

Petitioner counters that the Rule 80B appeal does not provide adequate review because a ruling in her favor would merely reverse respondent Town's failure to reinstate her and remand the matter back to respondent Town, while a ruling under section 1983 could provide damages. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 19-20.) She claims that the Town's focus on her resignation ignores her argument that the Town deprived her of her alleged interest on multiple occasions: when she was demoted at the November 4 meeting, when her requests to meet with the Board were allegedly denied, and when she was allegedly compelled to resign due to the reduction in hours and benefits. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 18-19.)

a. Adequate review

"[W]hen direct review is available pursuant to Rule 80B, it provides the exclusive process for judicial review unless it is inadequate." Gorham v. Androscoggin Cnty., 2011 ME 63, ¶ 22, 21 A.3d 115. In Gorham, the Law Court vacated dismissal of a section 1983 claim brought with a Rule 80B appeal. Id. ¶ 25. Gorham was suspended without pay in September 2009. Id. ¶ 4. In November 2009, the County Commissioners held a hearing, which Gorham attended, and voted to terminate Gorham's employment. Id. Gorham challenged the Superior Court's dismissal of his section 1983 claim, arguing that review of the hearing under the Rule 80B appeal would not be adequate because his suspension occurred before he had an opportunity to be heard. Id. ¶ 21. The Law

13

Court agreed, noting that the record was unclear as to whether Gorham had an opportunity to oppose the suspension before it was imposed or an opportunity to address the suspension at the hearing. Id. ¶¶ 24-25.

Here, it is undisputed that petitioner did not have an opportunity to oppose the reduction in her hours. She was not informed that her hours would be discussed at the November 4 meeting, nor was she invited to attend the meeting. (Pl.'s Addt'l S.M.F. ¶ 16; Def.'s Reply to Pl.'s Addt'l S.M.F. ¶ 16.) Her requests to schedule a meeting with the Board were not met. (Pl.'s Opp'n to Def.'s S.M.F. ¶ 40.) It is true she did not file a grievance, but this grievance would have been simply an objection to the Board's failure to provide her with an opportunity to be heard.

In addition, a finding in petitioner's favor under her section 1983 claim could provide her with damages, a remedy that is not available in a Rule 80B appeal. See 42 U.S.C. § 1983 (providing for damages, fees, and costs); M.R. Civ. P. 80B(c) (allowing a court to "affirm, reverse, or modify the decision under review" or "remand the case to the governmental agency for further proceedings"); Polk v. Town of Lubec, 2000 ME 152, ¶ 10, 756 A.2d 510 (plaintiff may pursue damages under section 1983 in addition to a rehearing or grant of permit under Rule 80B); Kane v. Comm'r of Dep't of Health & Human Servs., 2008 ME 185, ¶ 32, 960 A.2d 1196 (affirming Superior Court's dismissal of section 1983 claim as duplicative of Rule 80C appeal in part because Kane sought same relief under both claims). Petitioner alleges damages as a result of the Board's decision to reduce her hours, including harm to her personal privacy and reputation due to considerable press coverage. (Am. Compl. ¶ 47; Pl.'s Addt'l S.M.F. ¶¶ 31-32.) This alleged harm would not be adequately remedied under the Rule 80B appeal and petitioner is entitled to bring her section 1983 claim.

14

### b. Due process claim

A claim for a violation of due process requires a plaintiff to "show a deprivation of a constitutionally protected property or liberty interest." Mercier v. Town of Fairfield, 628 A.2d 1053, 1055 (Me. 1993). "Due process requires that a tenured public employee be given notice and an opportunity to be heard prior to termination." Moen v. Town of Fairfield, 1998 ME 135, ¶ 9, 713 A.2d 321. The hearing must give the employee "the opportunity to tell his or her side of the story and explain why termination should not occur." Id. If petitioner had a property interest, she may have been entitled to notice and a hearing before her hours were reduced. She has not established a property interest in continued employment, and her due process claim fails.

### i. Notice and hearing

Respondent Town relies on Monahan v. Romney for its argument that due process was not required because petitioner voluntarily resigned. 625 F.3d 42, 47 (1st Cir. 2010).ⁱ Monahan establishes that due process was not required if petitioner voluntarily resigned on November 25, but leaves open the questions of whether her resignation was truly voluntary and whether due process was required before the Board's November 4 decision to reduce her hours.

Petitioner claims her resignation was not voluntary because she felt compelled to resign. "[A] constructive discharge of a public employee without procedural due process constitutes an unconstitutional deprivation of property." Ryan v. City of Augusta, 622 A.2d 74, 76 (Me. 1993). "'Constructive discharge' usually describes

---

ⁱ In that case, plaintiff, the former Chairman of the Massachusetts Civil Service Commission, sued Massachusetts Governor Mitt Romney and claimed a violation of his due process rights following his resignation from the Commission. Id. at 43. Plaintiff claimed that his resignation was involuntary because Governor Romney's staff had pressured him to resign. Id. at 46. The First Circuit affirmed the District Court's finding that Monahan voluntarily resigned and that, as a result, his due process claim "necessarily fails." Id. at 47. The court concluded that due process was not required even if the resignation was a result of "events set in motion by his employer[.]" Id. (quoting Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 173 (4th Cir. 1988)).

harassment so severe and oppressive that staying on the job while seeking redress is intolerable." Bodman v. Me. Dep't of Health & Human Servs., 787 F. Supp. 2d 89, 109 (D. Me. 2011). Respondent Town argues that petitioner has not alleged facts that rise to this level. Petitioner argues that the record raises an inference that Mr. Field's "bad faith" compelled her to resign. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 18-19.) Although unclear, it appears that petitioner bases her allegation of bad faith on her claim that Mr. Field reduced the bookkeeper's hours in order to create a finance director position for himself. Even if this were true, this allegation falls far short of raising a genuine issue of material fact regarding the "severe and oppressive" harassment required for a claim of constructive discharge.

Petitioner's claim that she was entitled to due process before the reduction in her hours has more merit. The United States District Court for the District of Maine has recognized that procedural due process requirements apply to changes short of termination. See Trafford v. City of Westbrook, 669 F. Supp. 2d 133, 144-46 (D. Me. 2009) (discussing whether the process afforded a demoted city employee was adequate). In Trafford, the plaintiff was demoted from lieutenant to firefighter and suspended without pay for one week. Id. at 138. The court held that due process was satisfied because Trafford received a letter notifying him that the fire chief was going to recommend that the city demote him, Trafford knew the basis for this recommendation, and a four hour disciplinary hearing, which Trafford attended, occurred before his demotion went into effect. Id. at 145.

Unlike in Trafford, petitioner was not provided notice or an opportunity to be heard prior to the reduction in her hours. If she had demonstrated a property interest, she likely would have a due process claim against respondent Town for reducing her hours without notice or a hearing. This claim would be further strengthened if, as she

16

claims, Mr. Field thwarted her efforts to meet with the Board. (Pl.'s Opp'n to Def.'s S.M.F. ¶ 40.)

ii.    Property interest

To be entitled to due process, the plaintiff must first establish a property interest in continued employment. Lynch v. Lewiston Sch. Comm., 639 A.2d 630, 632 (Me. 1994). A property interest in continued employment may be established by contract, statute, or "by proof of an objectively reasonable expectation of continued employment." Mercier, 628 A.2d at 1055. "The employee must show more than the mere need or desire for continued employment; rather, he must be able to point to existing law or rules, or mutual understandings, wherein his claims of entitlement are secured and may be supported." Hammond v. Temp. Comp. Review Bd., 473 A.2d 1267, 1272 (Me. 1984) (citation omitted). "It is commonly accepted doctrine that there is no general property right to a job at a particular salary in public employment." Id.

In Mercier, the plaintiff was the former Town Manager of Fairfield, who challenged the Town Council's failure to re-appoint him at its organizational meeting. 628 A.2d at 1054. To establish a reasonable expectation of continued employment, Mercier presented evidence of:

> [B]oth his and the Council's stated intentions to create a contract for employment for an indefinite period, the Town's Charter provisions concerning just-cause termination, the routine annual reappointments that were effected without discussion, the positive evaluations of his performance issued by the Council in 1986 and 1988, the Council's urging Mercier to relocate to Fairfield to reflect his commitment to the Town, and a substantial salary increase in 1989.

Id. at 1056. The Law Court determined that Mercier had presented sufficient evidence to establish a reasonable expectation of continued employment. Id.

In Krennerich v. Inhabitants of Bristol, the court concluded plaintiff had a reasonable expectation of continued employment. 943 F. Supp. 1345, 1353 (D. Me. 1996).

17

Plaintiff stated in his affidavit that his contract was renegotiated to change his position to year-round employment, and he was hired with the understanding defendants "wanted [him] to stay indefinitely and [the] job was expected to continue indefinitely . . . It was agreed that [he] would be reviewed annually and terminated only for cause." Id.

In Durepos v. Town of Van Buren, the Law Court affirmed the Superior Court's judgment in favor of the Town of Van Buren and rejected plaintiff's claim that he was entitled to notice and a hearing before his termination. 516 A.2d 565, 566 (Me. 1986). Plaintiff was hired by the defendant in 1966 and promoted in 1973 to the position he held when terminated in 1982. Id. at 565. The court found that plaintiff had not established a reasonable expectation of continued employment where the dismissal "for cause" provisions under state law and in the town's personnel policy did not apply to plaintiff's dismissal for budgetary reasons. Id. at 566. Further, the record provided no basis for finding a justifiable expectation of continued employment. Id.

Here, petitioner asserts in her memorandum that she was a "tenured" employee. (Pl.'s Mot. Opp'n to Def.'s Mot. Summ. J. 3, 16.) Tenured public servants have a property interest in continued employment. Hammond, 473 A.2d at 1272. Petitioner does not identify any statute or contract that granted her tenure.[*] Accordingly, she must show an objectively reasonable expectation of continued employment. Mercier, 628 A.2d at 1055; see also Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 55 (1st Cir. 1990) ("[L]ength of employment and good behavior, in and of themselves, customarily do not create a property interest in continued employment."). Petitioner states that she worked for respondent Town for 26 years and "believed she had a right to continued

[*] Indeed, this court noted in its order on petitioner's motion to amend her complaint and respondent Town's motion to dismiss that "it is unclear what she alleges as the source of her property interest." (Order 10/1/14 8.)

18

employment and could only be terminated for just cause." (Pl.'s Addt'l S.M.F. ¶ 17.) In her amended complaint, she asserts that she "continues to have a protected property interest in continued employment." (Am. Compl. ¶ 9.) In addition, she suggests that her retirement plans were based on her expectation of continued employment when she states that, prior to November 4, she and her husband planned to retire by age 64 or 65. (Pl.'s Addt'l S.M.F. ¶ 17.) These facts show that petitioner believed her employment would continue, but she identifies no "mutual understandings" between respondent Town and her that secure her claim of entitlement. Hammond, 473 A.2d at 1272. In contrast to the strong showing in Mercier, petitioner has failed to raise a genuine issue of material fact regarding an objectively reasonable expectation of continued employment. As a result, she has not alleged a cognizable due process claim.

### c. Reorganization exception

When an employee is dismissed because of reorganization or other cost-cutting measures, a hearing is not required. Godin v. Machiasport Sch. Dep't Bd. of Dirs., 844 F. Supp. 2d 163, 169-70 (D. Me. 2012). The reorganization exception applies when the termination is in good faith, is directed at positions rather than individuals, and does not involve an evaluation of job performance. Id. at 170 (citation omitted).

The Town argues that the reorganization exception applies because its decision was in response to Mr. Field's memo about the Town Manager's responsibilities and the creation of a finance director position. (Def.'s Mot. Summ. J. 12-13.) Petitioner argues that there is insufficient evidence to show that respondent Town was "reorganizing" and that the record instead supports an inference that respondent Town based its decision on a discussion of petitioner's job performance during the executive session. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 17-18.) The court agrees that the record contains insufficient evidence to conclude that respondent Town was "reorganizing" because the

19

scope of the discussion during the executive session is unknown. As discussed, however, it is unnecessary to determine whether this exception applies because petitioner's due process claim fails.

## 2. MOTION TO STRIKE LAY OPINION TESTIMONY

Respondent Town argues that petitioner improperly relies on Mr. McHenry's opinion that Mr. Field and Mr. Libby "orchestrated" a plan to reduce the bookkeeper's hours in her opposition to respondent Town's motion for summary judgment. (Def.'s Mot. Strike 1; Pl.'s Opp. S.M.F. ¶¶ 17, 20-21.) "If a witness is not testifying as an expert, opinion testimony is limited to opinions that are: (a) Rationally based on the witness's perception; and (b) Helpful to clearly understanding the witness's testimony or to determining a fact in issue." M.R. Evid. 701. The lay witness's perception must be "adequately grounded on personal knowledge or observation . . . ." Mitchell v. Kieliszek, 2006 ME 70, ¶ 13, 900 A.2d 719 (citation omitted). "The judge has considerable discretion with respect to lay opinion." Field & Murray, Maine Evidence § 701.1 at 368 (6th ed. 2007).

Petitioner relies on Mr. McHenry's opinion to support her claims that respondent Town violated sections 2605 and 2606 and that she was constructively discharged. As discussed, petitioner has failed to raise a genuine issue of material fact regarding these issues. As a result, the motion to strike is largely moot. The court, nevertheless, concludes that Mr. McHenry's opinion does not meet the standard under Rule 701. Mr. McHenry admits that he cannot point to any personal knowledge or observation when he admits, "I got the sense that this was an orchestrated effort, but again, it was only a sense. I've never seen any actual evidence to support that sense." (Pl.'s Opp. S.M.F. ¶¶ 17, 20-21.) Therefore, the court grants respondent Town's motion to strike Mr. McHenry's lay opinion testimony.

20

CONCLUSION

As to count I, a genuine issue of material fact exists regarding the topic of discussion in the executive session on November 4, 2013. As to count II, petitioner has failed to show that she had a property interest in continued employment. Mr. McHenry's opinion that Mr. Field and Mr. Libby orchestrated a plan is not adequately grounded in his personal knowledge or observation.

The entry is

> Respondent Town of New Gloucester's Motion for Summary Judgment is DENIED as to Count I of the Amended Complaint. Trial will proceed on Count I as narrowed by this Order.
>
> Respondent Town of New Gloucester's Motion for Summary Judgment is GRANTED as to Count II of the Amended Complaint. Judgment is entered in favor of Respondent Town of New Gloucester and against Petitioner Sandra Sacco on Count II of the Amended Complaint.
>
> Respondent Town of New Gloucester's Motion to Strike Lay Opinion Testimony is GRANTED.

Date: November 10, 2015

Nancy Mills
Justice, Superior Court

CUMBERLAND COUNTY SUPERIOR COURT
PO BOX 412
PORTLAND ME 04112


JAMES CLIFFORD ESQ
CLIFFORD & CLIFFORD
62 PORTLAND RD
SUITE 37
KENNEBUNK ME 04043


MARK FRANCO ESQ
THOMPSON & BOWIE
PO BOX 4630
PORTLAND ME 04112-4630

STATE OF MAINE
CUMBERLAND, ss

SANDRA SACCO,

Plaintiff

v.

TOWN OF NEW GLOUCESTER,

Defendant

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-14-008
CUM-NDM- 10-01-14

ORDER ON MOTION TO AMEND
COMPLAINT, MOTION TO DISMISS,
AND MOTION FOR TRIAL OF FACTS

RCVD OCT 01 '14 AM 9:47

Before the court are the following motions: (1) plaintiff's motion to amend the complaint; (2) defendant's motion to dismiss plaintiff's complaint; and (3) plaintiff's motion for a trial of the facts.

BACKGROUND

Plaintiff alleges the following in the amended complaint. She began working for the Town of New Gloucester in 1988. (Am. Compl. ¶ 7.) Most recently, plaintiff served as the Deputy Treasurer/Bookkeeper for ten years until she resigned on November 25, 2013. (Am. Compl. ¶ 8.) The events leading up to and following plaintiff's resignation are the subject of this suit.

On November 4, 2013, the Selectmen for the Town of New Gloucester held a scheduled meeting at which the Selectmen decided to make plaintiff's position a part-time job at 24 hours per week and eliminate plaintiff's benefits. (Am. Compl. ¶ 13.) Plaintiff was not notified that the Selectmen would be discussing her position at the November 4 meeting. (Am. Compl. ¶ 17.) The Selectmen entered "executive session," in which they decided to create an interim finance director position that would perform some of the duties plaintiff had been performing. (Am. Compl. ¶ 13.) The Selectmen planned to appoint the Town

Manger, Sumner Field, who was due to retire on January 2, 2014, to the finance director position. (Am. Compl. ¶ 14.)

The day after the Selectmen meeting, the Town Manger informed plaintiff of the decision to reduce her hours and eliminate her benefits. (Am. Compl. ¶ 16.) On hearing the news, plaintiff became upset and distressed about her finances, health care coverage, and retirement expectations. (Am. Compl. ¶ 18.) Plaintiff became increasingly anxious during the next week and decided to seek medical advice. (Am. Compl. ¶ 19.) Plaintiff's doctor wrote a note on her behalf excusing her from work based on work-related stress and plaintiff was allowed FMLA leave from November 11 through November 24, 2013. (Am. Compl. ¶ 19.) During plaintiff's medical leave, the Town Manager wrote a memo describing plaintiff's poor job performance and stated any future examples of poor performance or negative attitude would result in her termination. (Am. Compl. ¶ 20.)

When plaintiff returned from leave on November 25, the Town Manager approached her with the memo he drafted and informed plaintiff that she was on "probation" for performance-related issues. (Am. Compl. ¶¶ 20, 22.) Plaintiff mistakenly believed that she was being suspended without pay. (Am. Compl. ¶ 24.) She became upset and left work. (Am. Compl. ¶ 24.) Later that day, plaintiff sent an email to the Town Manager and tendered her resignation. (Am. Compl. ¶ 25.) The Town Manager accepted her resignation on the same day. (Am. Compl. ¶ 26.)

On December 2, 2013, the Selectmen held a meeting at which they unanimously decided to reverse their November 4 decision to reduce the hours and benefits for the bookkeeper position. (Am. Compl. ¶ 27.) Selectman

2

McHenry requested formal confirmation that the reversal of the November 4 decision brought "everything back to before the November 4 meeting." (Am. Compl. ¶ 28.) Plaintiff was not informed of the decision to restore the bookkeeper position to full time. (Am. Compl. ¶ 29.) Soon after December 2, the Town of New Gloucester posted the job opening for the bookkeeper position on its website. (Am. Compl. ¶ 30.) The deadline for applications was advertised as December 26, 2013 but no time deadline was specified. (Am. Compl. ¶ 30.)

On December 26, the Selectmen held a special meeting to discuss budget issues, including whether to provide plaintiff with a severance package. (Am. Compl. ¶ 31.) Plaintiff attended the meeting and asked the Selectmen to reinstate her to the bookkeeper position. (Am. Compl. ¶ 32.) The Selectmen informed plaintiff that only the Town Manager could reinstate her to her position. (Am. Compl. ¶ 32.) Later on December 26, plaintiff wrote to the Town Manger to request reinstatement. (Am. Compl. ¶ 33.) Plaintiff sent an email to the Town Manager on January 2, 2014, and requested a response to her letter. (Am. Compl. ¶ 34.) The Town Manager wrote a letter to plaintiff dated January 6, 2014 and stated plaintiff's application for the bookkeeper position was received after the deadline and her application would not be considered for the position. (Am. Compl. ¶ 35.) Plaintiff received this letter on January 7, 2014. (Am. Compl. ¶ 35.)

On January 13, counsel for plaintiff sent a letter to the Town Manger and sought clarification regarding the finality of the January 6 decision not to rehire plaintiff. (Am. Compl. ¶ 36.) On January 21 and 23, counsel for the town informed plaintiff's counsel that there was no further right of municipal review of the Town Manager's decision not to consider plaintiff for reinstatement or

3

rehire and extended to plaintiff an offer of settlement. (Am. Compl. ¶ 37.) Plaintiff rejected the settlement offer on January 23, 2014.

PROCEDURAL HISTORY

Plaintiff filed her complaint for Rule 80B review and independent causes of action on February 7, 2014. On March 13, 2014, the court granted plaintiff's unopposed motion to join the independent claims with the Rule 80B action and issued an order specifying the future course of proceedings. On March 20, 2014, the court issued a scheduling order. Defendant filed a motion to dismiss the complaint on March 20, 2014. Plaintiff's opposition was filed April 15, 2014. On the same day, plaintiff filed a motion to amend her complaint. Defendant's opposition was filed May 5, 2014. On April 22, 2014, plaintiff filed a motion for a trial of the facts. M.R. Civ. P. 80B(d). Defendant's response was filed May 12, 2014.

DISCUSSION

### 1. MOTION TO AMEND COMPLAINT

Under M.R. Civ. P. 15(a), "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." If a responsive pleading is not permitted, a party may amend a complaint as a matter of course "at any time within 20 days after it is served." Id. Otherwise, the party may amend only with leave of the court or by written consent of the adverse party. Id.

It is unclear whether a responsive pleading is permitted or required in this case because the Rule 80B claim has been joined with independent claims. No responsive pleading is required to the Rule 80B complaint. M.R. Civ. P. 80B(a). Rule 80B(i) is silent on the issue of a responsive pleading. Neither the

4

order specifying the future course of proceedings nor the scheduling order required a responsive pleading.

If a responsive pleading is permitted, plaintiff is entitled to amend her complaint. See Kasu Corp. v. Blake, Hall & Sprague, Inc., 540 A.2d 1112, 1113 (Me. 1988). If a responsive pleading is not permitted, "leave shall be freely given when justice so requires." M.R. Civ. P. 15(a).

Although defendant argues that the amendment is futile because all counts of the amended complaint must be dismissed, the court concludes plaintiff's motion to amend will be granted. The court will consider defendant's arguments in the motion to dismiss and the opposition to the motion to amend the complaint to determine whether plaintiff's amended complaint should be dismissed.

## 2. MOTION TO DISMISS

On review of a motion to dismiss for failure to state a claim, the court accepts the facts alleged in plaintiff's complaint as admitted. Saunders v. Tisher, 2006 ME 94, ¶ 8, 902 A.2d 830. The court "examine[s] the complaint in the light most favorable to plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." Doe v. Graham, 2009 ME 88, ¶ 2, 977 A.2d 391 (quoting Saunders, 2006 ME 94, ¶ 8, 902 A.2d 830). "For a court to properly dismiss a claim for failure to state a cause of action, it must appear 'beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim.'" Dragomir v. Spring Harbor Hosp., 2009 ME 51, ¶ 15, 970 A.2d 310 (quoting Plimpton v. Gerrard, 668 A.2d 882, 885 (Me. 1995)).

5

## A. Rule 80B Complaint (Count I)

Defendant argues that plaintiff's Rule 80B claim is untimely. Under Rule 80B,

> [t]he time within which review may be sought shall be as provided by statute, except that if no time limit is specified by statute, the complaint shall be filed within 30 days after notice of any action or refusal to act of which review is sought unless the court enlarges the time in accordance with Rule 6(b), and, in the event of a failure to act, within six months after expiration of the time in which action should reasonably have occurred.

M.R. Civ. P. 80B(b). The parties dispute which of the town's actions is the subject of the Rule 80B appeal. Defendant argues plaintiff is challenging the decision by the Town Selectmen to reduce her hours. Plaintiff alleges she was entitled to reinstatement and therefore asks the court to review the decision not to rehire her. In the amended complaint, plaintiff requests review of the town's "[f]ailure to reinstate Petitioner to her former position after the reversal of action reducing her hours and terminating her benefits." (Am. Compl. ¶ 42(E).) The court evaluates whether plaintiff's claim is timely with regard to that action.

Plaintiff first argues this is a failure to act claim, which extends the time to file to six months. M.R. Civ. P. 80B(b). In plaintiff's amended complaint, she alleges the Town Manager refused to consider her application, which constitutes a failure to act. (Am. Compl. ¶ 35); see Lingley v. Me. Workers' Comp. Bd., 2003 ME 32, ¶ 9, n.7, 819 A.2d 327 (if agency refuses to take any action, agency has refused to act). On January 21, 2014, the town confirmed its decision not to consider plaintiff's application would not be reviewed further. (Am. Compl. ¶ 37.) The refusal to consider plaintiff's application resulted in her not being reinstated but the town did not make a specific decision not to rehire plaintiff; the town refused to consider her application and later confirmed there was no

6

further review available of the decision not to consider the application. Accordingly, plaintiff's complaint should have been filed "within six months after the expiration of the time in which action should reasonably have occurred." M.R. Civ. P. 80B(b).

Assuming, however, the thirty-day period applies, the final judgment rule renders the complaint timely. Counsel for plaintiff inquired on January 13, 2014 whether the Town Manager's decision constituted a final decision. As one commentator has explained:

> It may not always be easy to determine the time when the administrative action being reviewed was 'final' so as to start the 30-day period running. In some cases, the Law Court has shown an intention to apply the time period for review of administrative action in a way that will accomplish substantial justice.

Harvey, Maine Civil Practice 3, § 80B:3, page 439 (2011 ed.). Although final judgment is a requirement for judicial review, the requirement is "flexible enough to permit adaptation to special situations." Sawin v. Town of Winslow, 253 A.2d 694, 698 (Me. 1969). In this case, counsel for plaintiff clarified whether the Town Manager's decision was a final action and did not receive a response until January 21, 2014. On this date, plaintiff had notice the Town Manager's decision was a final action by the town and no further municipal review was available. The complaint was filed on February 7, 2014 and was therefore filed in a timely manner within 30 days.[1] See Cumberland Vill. Hous. Assocs. v. Inhabitants of the Town of Cumberland, 605 F. Supp. 269, 273 (D. Me. 1985).

---

[1] Plaintiff argues incorrectly that she was entitled to an additional three days to file because she received notice of the Town Manager's decision not to reinstate her by mail. See M.R. Civ. P. 6(c). Rule 6, however, concerns service by mail. Rule 80B is concerned not with service but the date on which plaintiff had notice. See M.R. Civ. P. 80B ("[T]he complaint shall be filed within 30 days after notice of any action . . . ."). Plaintiff had actual notice as of January 7, 2014. (Am. Compl. ¶ 35.)

## B. Due Process Claim (Count II)

To succeed on her procedural due process claim, [2] plaintiff must demonstrate she has "a property interest as defined by state law and . . . that the defendants, acting under color of state law, deprived [her] of that property interest without constitutionally adequate process."[3] Godin v. Machiasport Sch. Dep't Bd. of Dirs., 844 F. Supp. 2d 163, 169 (D. Me. 2012). Plaintiff alleges she had a constitutionally protected property interest in her employment, defendants deprived her of her benefits and reduced her hours acting under color of state law, and she did not receive any notice or opportunity to be heard before or after the decision to reduce her hours and eliminate her benefits.[4] (Am. Compl. ¶¶ 9, 13, 17, 29.)

Based on plaintiff's allegations, it is unclear what she alleges as the source of her property interest. An employee can have a property interest in continued employment by statute, contract, or an objective reasonable expectation of continued employment considering the circumstances. Defendant argues

___

2 Plaintiff also argues she alleges a substantive due process violation. Plaintiff has failed to allege conduct that is "truly outrageous, uncivilized, and intolerable" as required for a substantive due process claim. Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 16, (1st Cir. 2011); see also Farris v. Poore, 841 F. Supp. 2d 436, 441-42 (D. Me. 2012) (holding that allegations surrounding an improper termination decision were "insufficient to state a substantive due process claim").

3 "State and federal due process requirements are identical." Fichter v. Bd. of Envtl. Prot., 604 A.2d 433, 436 (Me. 1992).

4 Under the exclusivity doctrine, "when . . . a municipality or agency's decision is reviewable pursuant to M.R. Civ. P. 80B . . . that process provides the 'exclusive process for judicial review unless it is inadequate.'" Antler's Inn & Rest., LLC v. Dep't of Pub. Safety, 2012 ME 143, ¶ 14, 60 A.3d 1248 (quoting Gorham v. Androscoggin County, 2011 ME 63, ¶ 22, 21 A.3d 115). "For example, due process claims alleging a failure to hold a public hearing or challenging the exclusion of evidence are not cognizable section 1983 claims when a Rule 80B process is available." Id. In this case, however, plaintiff alleges she "had a property right in continued employment [and was] entitled to notice and an opportunity to be heard before [she could] be deprived of that right." Gorham, 2011 ME 63, ¶ 23, 21 A.3d 115. An employee must have the opportunity to tell her side of the story. Id. Based on the allegations in the amended complaint, direct review pursuant to Rule 80B is not adequate. Id. ¶ 25.

8

plaintiff's voluntary resignation ended any claim defendant deprived her of a property interest. See Monahan v. Romney, 625 F.3d 42, 47 (1st Cir. 2010). Plaintiff argues constructive discharge, a fact-intensive claim. See Lauck v. Campbell County, 627 F.3d 805, 812 (10th Cir. 2010) (Am. Compl. ¶¶ 13-25.) Examining the complaint in the light most favorable to plaintiff, it does not appear beyond doubt plaintiff is entitled to "no relief under any set of facts that might be proven in support of the claim." Dragomir, 2009 ME 51, ¶ 15, 970 A.2d 310 (quotations omitted). Accordingly, plaintiff has alleged a claim for a violation of due process under 42 U.S.C. § 1983.[5]

### C. Equitable Estoppel (Count III)

"To prove equitable estoppel against a governmental entity, the party asserting it must demonstrate that (1) the governmental official or agency made misrepresentations, whether by misleading statements, conduct, or silence, that induced the party to act; (2) the party relied on the government's misrepresentations to his or her detriment; and (3) the party's reliance was reasonable." State v. Brown, 2014 ME 79, ¶ 14, ___ A.3d ___. Plaintiff has failed to identify any misleading statements made by the town or the Town Manager. Although she argues she relied on the December 2, 2013 decision to reverse the November 4, 2013 vote, she alleges she had no notice of December 2 vote. (Am. Compl. ¶ 29.) Accepting the allegations in plaintiff's complaint as true, plaintiff has failed to allege a valid claim for equitable estoppel.

---

5 There is an exception to due process requirements known as the "reorganization exception," which comes into play "when the [action] at issue is in good faith directed at positions rather than individuals, and performance factors do not play a role . . . ." Godin, 844 F. Supp. 2d at 170. Plaintiff alleges the reduction in her hours and elimination of her benefits was not in good faith. (Am. Compl. ¶¶ 43, 68.)

9

## D. Promissory Estoppel (Count IV)

A claim for promissory estoppel against a municipality requires a party to first demonstrate the town itself made a promise or the town ratified the unauthorized promise of one of its agents or employees. Budge v. Town of Millinocket, 2012 ME 122, ¶ 23, 55 A.3d 484. Plaintiff has failed to identify a promise on which she relied. Plaintiff does not allege that the town or any town officer promised she would be reinstated. The vote to reinstate the bookkeeper position to full time does not constitute a promise to reinstate plaintiff to her former position. Accepting the allegations in plaintiff's complaint as true, plaintiff has failed to allege a valid claim for promissory estoppel.

## E. Interference with Prospective Economic Advantage (Count V)

Plaintiff concedes that she has failed to state a claim for interference with prospective economic advantage against the town. In her amended complaint, she pursues the claim against Town Manager Field individually. "Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." Rutland v. Mullen, 2002 ME 98, ¶ 13, 798 A.2d 1104. In this case, plaintiff alleges Mr. Field intentionally and fraudulently interfered with her prospective economic advantage. (Am. Compl. ¶¶ 65-66.) Because fraud is the basis of plaintiff's claim, she must demonstrate

> (1) a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the

10

representation as true and acts upon it to the damage of the plaintiff.

Sherbert v. Remmel, 2006 ME 116, ¶ 4 n.3, 908 A.2d 622.

"The complaint must allege facts with sufficient particularity so that, if true, they give rise to a cause of action; merely reciting the elements of a claim is not enough." America v. Sunspray Condo. Assoc., 2013 ME 19, ¶ 13, 61 A.3d 1249. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." M.R. Civ. P. 9(b). Plaintiff's complaint merely recites the elements of the claim and she has failed to plead fraud with particularity, including identifying any alleged false representation. Accepting the allegations in plaintiff's complaint as true, plaintiff has failed to allege a valid claim for interference with prospective economic advantage.

F. Intentional Infliction of Emotional Distress (Count VI)

A claim for intentional infliction of emotional distress requires a plaintiff to demonstrate:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct;
>
> (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;
>
> (3) the actions of the defendant caused the plaintiff's emotional distress; and
>
> (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Curtis v. Porter, 2001 ME 158, ¶ 10, 784 A.2d 18 (quotation marks omitted). Plaintiff alleges the intentional collusion between the Town Manager and the Town Selectmen to reduce plaintiff's hours, terminate her benefits, and not

11

reinstate her to her position caused her severe emotional distress. (Am. Compl. ¶¶ 40, 68.) Plaintiff's distress required her to seek medical attention and go on medical leave. (Am. Compl. ¶ 19.) "Elements of intent and the extreme and outrageous nature of the alleged conduct are questions of fact for the jury." Gurski v. Culpovich, 540 A.2d 764, 767 (Me. 1988). Count VI of the complaint will not be dismissed.[6]

### G. Negligent Misrepresentation (Count VII)

Maine follows the Restatement (Second) of Torts definition for the tort of negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

St. Louis v. Wilkinson Law Offices, P.C., 2012 ME 116, ¶ 18, 55 A.3d 443. As with plaintiff's claim for interference with prospective economic advantage, plaintiff has failed to allege an actionable misstatement. Accepting the allegations in plaintiff's complaint as true, plaintiff has failed to allege a valid claim for negligent misrepresentation.

### 3. MOTION FOR TRIAL OF FACTS

Plaintiff is entitled to a trial of the facts on the allegations in count I of her complaint.[7] Under Rule 80B(d), plaintiff is not required to move for a trial of the

6 Plaintiff's remaining counts may not be actionable based on immunity pursuant to the Maine Tort Claims Act and based on Maine's Workers' Compensation Act. As defendant recognizes, however, these defenses will require record evidence that is not yet before the court. (Def.'s Opp. to Pl.'s Mot. to Am. Compl. 5-6 n.1; 7 n.4.)

7 Although unclear, defendant does not appear to object to a trial of the facts on this count. (Def.'s Response to Pl.'s Mot. for Trial of Facts 2.)

facts on her independent claims. Baker's Table, Inc. v. City of Portland, 2000 ME 7, ¶ 11, 743 A.2d 237. These claims are governed by Rule 16. M.R. Civ.P. 16; see Orders dated 3/13/14 & 3/20/14.

The entry is

> Defendant's Motion to Dismiss is granted in part and denied in part as follows: Counts III, IV, V, and VII of Plaintiff's Amended Complaint are DISMISSED. Counts I, II, and VI of Plaintiff's Amended Complaint are NOT DISMISSED.
>
> Plaintiff's Motion to Amend Complaint is GRANTED.
>
> Plaintiff's Motion for Trial of the Facts is GRANTED on Count I of the Amended Complaint.

Date: 10·1·14

Nancy Mills
Justice, Superior Court

AP-14-008

13

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

MARK FRANCO ESQ
THOMPSON & BOWIE
PO BOX 4630
PORTLAND ME 04112-4630

Defendants
Attorney

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

JAMES CLIFFORD ESQ
CLIFFORD & CLIFFORD LLC
62 PORTLAND ROAD SUITE 37
KENNEBUNK ME 04043

Plaintiffs
Attorney